yard at Binghamton, and it is claimed it was not moving more than two or three miles an hour at the time the plaintiff claims he was ejected therefrom.

Under such conditions, we are of the opinion that the learned judge at Special Term erred in refusing to change the place of trial to the county of Broome. The condition of plaintiff before and after the accident can be shown by the physician and by one or two witnesses, and, if the case be bona fide, it is not a fact to dispute which the defendant can bring witnesses. The main contention is upon the question as to whether the plaintiff was in fact ejected from the defendant's train. Upon that contention all the witnesses, except the plaintiff himself, reside either in Broome county or upon the line of the defendant's road. All the witnesses who were trainmen upon this trial will necessarily be sworn. The witnesses who saw the plaintiff after the time that he alleges he was ejected, and to whom he made no complaints, are all of them very material witnesses, as it is very unlikely the plaintiff would then have remained silent if he had received the treatment which he now claims to have received at that time. It is true the plaintiff offers to stipulate that he made no complaint to these various employés of the defendant whom he afterwards saw, and, if this order should stand, it should stand upon the condition that such a stipulation be filed. But the bearing of the plaintiff, his conversation, both what he did and said, are important facts to be shown in defendant's behalf, to which the plaintiff could not stipulate. Again, it is true that most of the defendant's witnesses are its employés. It has never been held that the court will not consider the convenience of employé witnesses in determining where the place of trial should be held. It is undoubtedly true that their convenience will be less considered than the convenience of witnesses who are not in any way connected with the parties. This injury, however, is claimed to have occurred in Broome county. Upon the main point of contention all of the witnesses, except the plaintiff, reside there or within easy access. The ends of justice would in our judgment be promoted by requiring that this action be tried in Broome county. The order should, therefore, be reversed without costs and the motion granted, with costs to defendant to abide the event of the action.

Order reversed without costs, and motion granted, with $10 costs to defendant to abide the event of the action. All concur, except COCHRANE, J., who dissents.

WILSON v. CENTRAL INS. CO., Limited.

(Supreme Court, Appellate Division, First Department. December 10, 1909.)

1. INSURANCE (§ 147*)—POLICY—CONSTRUCTION—WHAT LAW GOVERNS.

Where plaintiff, a British subject, took out an accident policy in defendant a British company, covering accidents in Europe, the United States, and Southern Canada, it was governed by the laws of Great Britain.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 293; Dec. Dig. § 147.*]

2. INSURANCE (§ 612*)—ACCIDENT POLICY—SETTLEMENT—ARBITRATION—CONDI-
TIONS PRECEDENT.

A British accident policy provided that any right to recover under the
policy should be forfeited after six months from the accident, and another
provision declared that any difference should be referred to an arbitrator
whose decision should be final, and that the provision should be taken
as an agreement to arbitrate within the arbitration act of 1889, the arbi-
tration (Scotland) act of 1894, or any subsisting statutory modification
thereof, and that the award should be a condition precedent to enforcing
the liability of the company. The act specified provided that the court or
a judge might, on application of a party on notice, appoint an arbitrator
who should have the same powers to make an award as if he had been ap-
pointed by consent of parties. *Held*, that such provisions for arbitration
and imposing time for settlement of claims were conditions precedent to
insured's right to recover on the policy; and hence, having neither been
performed nor waived, no recovery could be had.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1522; Dec. Dig.
§ 612.*]

3. INSURANCE (§ 576*)—ACCIDENT INSURANCE—CONDITIONS PRECEDENT—ARBI-
TRATION—WAIVER.

Where an accident policy required arbitration as a condition precedent
to insured's right to recover on the policy, and the insured's right to the
appointment of an arbitrator by a court or judge was conferred by statute
on the insurer's refusal to concur in an arbitrator's selection, the in-
surer's refusal to arbitrate was not a waiver of insured's obligation to sub-
mit the claims to an arbitrator.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1436–1438; Dec.
Dig. § 576.*]

4. INSURANCE (§ 576*)—ADJUSTERS—ARBITRATION PROVISION—WAIVER.

An insurance adjuster, to whom the adjustment of a loss had been re-
ferred by the insurer, had no authority per se to waive a condition of the
policy providing for submission of claims to arbitration.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1436–1438; Dec.
Dig. § 576.*]

Houghton and Clarke, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by James Wilson against the Central Insurance Company,
Limited. Judgment for plaintiff, and defendant appeals. Reversed,
and new trial ordered.

Argued before INGRAHAM, LAUGHLIN, CLARKE, HOUGH-
TON, and SCOTT, JJ.

John S. Sheppard, Jr., for appellant.
S. J. Rosenblum, for respondent.

INGRAHAM, J. The plaintiff was a subject of Great Britain and
the defendant corporation organized and existing under the laws
of Great Britain. The plaintiff had been in the employ of the de-
fendant as its agent. The defendant issued to the plaintiff a policy
of insurance covering accidents happening in Europe which was ex-
tended by an indorsement on policy that covered risks attendant on
journeys by the assured to the United States of America and the South
of Canada. This policy insured the plaintiff against accidents within
12 months beginning at noon on May 9, 1903. One of the condi-
tions to which this policy was subject was that the right to recover

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

payment of any capital sum insured under this policy should be for-
feited and extinguished on the expiry of six months from the date
of the accident, and the right to recover payment of the weekly com-
pensation should be forfeited and extinguished on the expiry of 15
months from the date of the accident or sickness, on the completion
of which periods, respectively, the liability of the company in respect
to such accident or sickness should cease and determine, unless within
these periods, respectively, a settlement with the insured or his rep-
resentatives has been agreed upon or referred to arbitration in terms
of condition 8. Condition 8 is as follows:.

"If any difference or dispute shall arise respecting the liability of the com-
pany or the amount payable to the insured, the matter in difference shall be
referred to the arbitration and decision of a neutral arbitrator, and the de-
cision of the arbitrator shall be final and binding on all parties and this con-
dition shall be deemed and taken to be an agreement to refer as aforesaid
within the meaning of the Arbitration Act, 1889, the Arbitration (Scotland) Act
1894, or any for the time being subsisting statutory modification thereof and it
is hereby expressly stipulated and declared that the obtaining of an award by
such arbitrator shall be a condition precedent to enforcing the liability of the
company in respect to any claim under this policy regarding which any such
difference may have arisen; and, further, that each party shall pay his or
their own costs of the reference, and shall also pay one-half of the costs of
the arbitrator, and of the award, and of any application to the court which
may be necessary for the appointment of a single arbitrator, should such ap-
plication be required."

After this policy was issued, and in June, 1903, the plaintiff came
to this country, and engaged in soliciting insurance, and traveled
about the country for that purpose. He took a temporary appoint-
ment from the German Insurance Company as managing agent, which
required him to be constantly traveling. On February 26, 1904, while
underneath a railroad bridge in Allegany City, Pa., his right eye
was injured. It became much inflamed and swollen, and subsequently
plaintiff claims to have lost the sight of the eye. On February 29,
1904, the plaintiff wrote a letter to the defendant, informing it of the
accident to his eye on the 26th inst. This letter was answered March
12, 1904, with the request that the plaintiff fill up and return a printed
form which appears to have been inclosed in the letter, and this re-
quest the plaintiff complied with on the 22d day of April, 1904. There
was considerable correspondence between the parties until the 27th
of June, when the defendant wrote to the plaintiff that it had in-
structed its adjuster in Pittsburgh to deal with the matter. The plain-
tiff thereafter had interviews and correspondence with this adjuster,
and finally, on the 19th day of December, 1904, the plaintiff wrote to
the defendant, stating that he had endeavored to adjust his claim
with the adjuster, but without success. Some time in February the
adjuster told the plaintiff that the defendant would not entertain any
claim for the loss of the sight of his eye, whereupon the plaintiff wrote
to the defendant, stating that he would not entertain any other propo-
sition from them except for the loss of his eye. The plaintiff then
offered to submit to a single neutral arbitrator in this country, but
that offer was declined. Subsequently, and on the 9th day of March,
1905, the plaintiff proposed several persons as arbitrators and stated
that if the defendant did not accept his offer he would instruct his at-

torney in London to take necessary steps to enforce his claim. Finally, on the 9th day of June, 1905, plaintiff's solicitors in London wrote to the defendant, stating that the claim had been placed in their hands, and, unless payment was made without delay, proceedings would be taken to recover £550 sterling without further notice. Subsequently the plaintiff submitted to the defendant the names of several Irish members of Parliament and others as arbitrators to which the defendant refused to agree. Not having arrived at any settlement with the defendant, the plaintiff commenced this action to recover under the policy.

By the English arbitration act of 1889, referred to in the policy, it is provided that the court or judge may on application by the party who gave the notice appoint an arbitrator, umpire, or third arbitrator, who shall have the like powers to act in the reference and make an award as if he had been appointed by consent of all parties. As both parties to this transaction are citizens of Great Britain and there domiciled, it is clear that the contract must be construed according to the laws of Great Britain. Both parties called witnesses to testify as to the law. An English barrister testified for the plaintiff, and was asked a hypothetical question setting out the provisions of the policy, and in response to which the witness answered that "under the laws of Great Britain and on the facts stated condition 8 above quoted as to arbitration is a good and valid condition precedent," and that, on the facts stated, the plaintiff would be precluded from recovering from the insurance company, unless the insurance company by some overt act had expressly notified the plaintiff that it would not proceed to arbitration at all, and excused the plaintiff from making an application to any court or judge to appoint an arbitrator.

The plaintiff testified to many interviews with the defendant's adjuster in April or May, 1904; that in one of these conversations he says they conversed about the seventh clause of the policy, and that the defendant's adjuster said that it would be absurd to apply that clause; that it would not apply in the plaintiff's case because he believed that the plaintiff would get the sight of his eye again. He further testified that the adjuster told him that, if the defendant agreed to arbitrate, it must be done in England, and that subsequently this adjuster told him that the company would not arbitrate at all. It was after this conversation that the plaintiff's solicitor proposed arbitration, and the plaintiff had an interview with the defendant's representatives in this country in respect to the arbitration. On behalf of the defendant, this adjuster denied ever having stated to the plaintiff that the defendant would not arbitrate, or that the defendant waived any condition of the policy. There is not the slightest evidence to show that this adjuster had any authority to waive any of the conditions of this policy, and the matter had only been referred to him to determine whether or not a settlement could be arrived at. The parts of the deposition of the English barrister who had been called on behalf of the plaintiff which had not been read by the plaintiff were read by the defendant. He there testified that, upon the facts stated in the hypothetical question, the defendant was not liable to the plaintiff because the insurance company having rejected the plaintiff's claim,

a difference or dispute did arise respecting the liability of the company and the amount payable to the insured, which matter in difference ought in the first instance to have. been referred to arbitration and an award obtained. The obtaining of an award was a condition precedent to a right on the part of the plaintiff to maintain an action on the policy for the insurance moneys, and that no right of action vested in the plaintiff until after arbitration held and award obtained, and also because the right to recover the capital sum was forfeited and extinguished before action brought, six months having expired since the date of the accident without, within that period, a settlement being arrived at or a reference made to arbitration in terms of condition 8; that plaintiff is precluded from recovering by condition 7 unless he was excused by the act of the insurance company from taking the proper steps to have the dispute referred to arbitration; that under the laws of Great Britain the conditions 7 and 8 are valid and enforceable in accordance with their terms; that under the arbitration act of 1889 an insured has under a policy of accident insurance containing a condition as to arbitration in the language of condition 8 the right and power to cause a matter in difference as between himself and the insurance company to be referred to the arbitration and decision of a neutral person as single arbitrator and to secure an award by such arbitrator of the amount, if any, due from the insurance company, by an application, usually made to a judge sitting in chambers under section 5 of the arbitration act of 1889, and sections 2 and 3 of the arbitration (Scotland) act of 1894, without the co-operation or assistance of the insurance company.

An English barrister was called by the defendant as a witness. He testified that the defendant was not liable to the plaintiff in any sum whatever upon the facts stated in the hypothetical question; that the right to recover the capital sum insured by the policy has been forfeited and extinguished, and the liability of the company has ceased and determined by the expiry of six months from the date of the accident without a settlement having been agreed on or referred to arbitration in terms of condition 8; that a difference has arisen respecting the liability of the company within the meaning of condition 8, and no award of such arbitrator as mentioned in that condition has been obtained, and the obtaining of such award is by that provision made a condition precedent to enforcing the liability of the company in respect of a claim made under the policy; that this is a valid condition precedent; and on the facts stated, it precludes the plaintiff from recovering from the company, unless waived by the company. I do not think that there is any dispute as to the laws of Great Britain applicable to this claim as between these parties. It seems to me clear by the law of England these provisions contained in sections 7 and 8 and made a part of the policy proved are conditions precedent to the maintaining of any action at law based upon the policy. That condition is that, within six months from the time of the accident, there shall be a settlement between the insured and the company as to all claims covered by the policy or a reference of the question to an arbitrator either by agreement of the parties or by obtaining the appointment of an arbitrator under the arbitration act of 1889. It is not such a short

statute of limitations as has been before the courts of this state in many reported cases, but a condition precedent upon which the right to maintain an action depends. A refusal to arbitrate is not a waiver of this condition of the policy. There was by the refusal to agree upon an arbitrator presented a situation contemplated by the condition which would justify either party in making an application to the English courts for the appointment of an arbitrator. The distinction between the waiver of the right to appoint an arbitrator and the waiving of the condition imposed upon the plaintiff by sections 7 and 8 of this policy is quite clear, and certainly there provisions called by the English barristers conditions precedent can only be waived by a distinct act on the part of the defendant which recognized the existence of the liability irrespective of the performance of the condition precedent. I do not think there is any evidence in this case which justifies a jury in finding such a waiver. Assuming that the time in which an action could be brought was waived, there was never at any time a waiver of the right of the defendant to insist that an arbitrator should be appointed and the arbitration had before an action could be maintained, and there is certainly no evidence to justify a finding that the defendant ever waived that condition. I think that there is no evidence to show that this adjuster in this country with whom the plaintiff claims to have had these conversations upon which this waiver is sought to be sustained had any authority to make such a waiver or that he actually did make such a waiver. It seems to me that the plaintiff failed to establish any cause of action, and the complaint should have been dismissed.

I therefore think that the judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

LAUGHLIN and SCOTT, JJ., concur.

HOUGHTON, J. (dissenting). The defendant is an English company, and on the 9th day of May, 1903, at London, it issued to the plaintiff, a British subject, an accident policy providing, amongst other things, that it would pay to the insured £500 in case he received within the life of the policy an accident to an eye which should cause total blindness within one calendar month, and in addition, would also pay his reasonable physician's bills. By its terms the policy covered only accidents happening in Europe, but, upon the plaintiff informing the general manager of the defendant that he contemplated a journey to the United States, there was indorsed upon a policy a memorandum to the effect that it should be deemed to cover risks attendant on journeys by the assured to the United States of America and the South of Canada. On the 26th of February, 1904, within the life of the policy, unless it had been forfeited by acts of the assured, at Pittsburgh, Pa., the assured received an injury, through accident, to one of his eyes, which he claimed resulted in total blindness within one calendar month. On the 29th of February the plaintiff wrote to the defendant at London, informing it of the accident and claiming compensation, and asking advice as to what he should do. The defendant thereupon, after some delay, sent to the plaintiff blank forms of proof of loss to

be filled up by him and returned to them, which request was complied with, and the proofs retained by the defendant. After receiving these proofs of plaintiff's claim, the defendant authorized one Denneen of Pittsburgh to make inquiries and adjust the claim. The plaintiff ultimately wholly lost the sight of the injured eye, and two matters seem to have been under investigation by the defendant with respect to the accident, the one whether such total blindness occurred within one calendar month, and the other whether the assured had established his residence at Pittsburgh, instead of continuing a journey throughout the United States, as his permit provided. Ultimately the defendant claimed that the whole premium had not been paid, and that it had not received notice of the accident within seven days as the policy provided.

The plaintiff was able to produce a letter of the defendant acknowledging payment in full of the premium, and the contention that notice of the accident was not received within the stipulated time was very properly abandoned because the defendant requested proofs of loss long after such period had expired without questioning the regularity of the notice. Amongst the conditions contained in the policy are those numbered "7" and "8." So far as material to the controversy involved, condition numbered 7 provided that the defendant should not be liable to pay any sum until the amount of compensation due or the defendant's liability to pay had been ascertained and proved to the satisfaction of the directors; and, further:

"The right to recover payment of any capital sum insured under this policy shall be forfeited and extinguished on the expiry of six months from the date of the accident and the right to recover payment of the weekly compensation shall be forfeited and extinguished on the expiry of fifteen months from the date of the accident or sickness, on the completion of which periods, respectively, the liability of the company in respect of such accident or sickness shall cease and determine, unless within these periods, respectively, a settlement with the insured or his representatives has been agreed upon or referred to arbitration in terms of condition 8."

Condition 8 reads as follows:

"If any difference or dispute shall arise respecting the liability of the company or the amount payable to the insured, the matter in difference shall be referred to the arbitration and decision of a neutral person as single arbitrator, and the decision of the arbitrator shall be final and binding on all parties and this condition shall be deemed and taken to be an agreement to refer as aforesaid within the meaning of the Arbitration Act, 1889, the Arbitration (Scotland) Act, 1894, or any for the time being subsisting statutory modification thereof and it is hereby expressly stipulated and declared that the obtaining of an award by such arbitrator shall be a condition precedent to enforcing the liability of the company in respect of any claim under this policy regarding which any such difference may have arisen."

The arbitration act referred to was introduced in evidence, and, amongst other things, it provides that, where a submission to a single arbitrator by agreement has been made, any party may serve the other with a written notice to appoint an arbitrator, and, if he shall fail to do so within seven days, a court or judge, may on application of the party giving the notice, appoint an arbitrator who shall have the same powers as one designated upon consent of the parties, and that a submission to arbitration, unless a contrary intention is expressed therein, shall be irrevocable except by leave of the court, and shall

have the same effect in all respects as if it had been made by an order of the court. The plaintiff wrote many letters to the defendant and to Denneen, containing propositions and urging an adjustment of his claim and making certain inquiries. Some of his inquiries were answered and some were not. He also had several interviews with Denneen and one with the general manager of the defendant, who was temporarily in this country. The principal contention of the defendant and of Denneen was that blindness did not occur within one calendar month from the accident. The plaintiff made a proposition that the matter be arbitrated by the mayor of Pittsburgh, or the mayor of Allegany, or the British Consul, or any reputable person that Denneen might select. Upon receiving this proposition, Denneen desired time to write the company, and finally, more than a year after the accident, Denneen informed the plaintiff that the company were not fools enough to arbitrate with an Irishman in the United States, and, as plaintiff testifies, that the defendant would not arbitrate at all either in America or in England. Denneen denies saying that the company would not arbitrate at all, but after this interview, the plaintiff sent his papers to an attorney at London, and he opened negotiations with the defendant toward arbitration, and proposed several names as arbitrators. The defendant through its attorneys did not decline arbitration, but did decline arbitrating before any one of the men suggested by the plaintiff's attorney. The plaintiff did not give the defendant notice to appoint an arbitrator or apply to any English court or judge for the appointment of one, and no appointment was ever made. This declination to submit to the arbitrators named by the plaintiff's attorney was made in writing on the 30th day of May, 1906, and on the 25th day of October, 1906, the defendant's general manager being in this country, the plaintiff testifies that he had an interview with him in which he said that his views respecting the matter of plaintiff's claim against his company were the same as Denneen's, and that the company would arbitrate neither in the United States nor England. Thereupon the plaintiff asked him if that was final, and he said he was going back to England shortly, and that the plaintiff should write him a letter so as to remind him of the matter when he arrived, and that he would thereupon consult the defendant's solicitors, and, if he made up his mind to send a check to plaintiff, he would write the plaintiff where he could get the company's draft for the amount, adding, however, that, if the plaintiff did not hear from him before Christmas following, he could go ahead and sue, that, if the check was not sent, it would mean the defendant would not arbitrate either in England or any other place. No check was received, and thereafter, in January, 1907, this action was brought.

By his complaint the plaintiff alleged that he had duly complied with all the terms and conditions of the policy on his part, and that he had at all times been ready and willing to refer whatever difference or dispute there may have been under the policy to an arbitrator or arbitrators, but that the defendant had neglected and refused to refer such difference or dispute to such arbitration. The defendant, amongst other defenses, alleged specially that the plaintiff had not complied with

the condition as to arbitration, which was a condition precedent, in that he had not obtained any award or the appointment of an arbitrator in respect to the claim against the defendant; and, further, that more than six months had expired from the date of the accident, and that no settlement or arbitrator had been agreed upon, and hence that the action was not maintainable.

The defendant contended at the trial, and now contends, that the plaintiff's complaint was not sufficient to entitle him to prove waiver of the condition of the policy respecting the bringing of the action within six months after the happening of the accident, or as to the arbitration; and, in effect, that the provision with respect to arbitration required the plaintiff before he could bring any action at all, whether the defendant refused to arbitrate or not, to obtain the award of an arbitrator. The learned trial court held that the allegation of the complaint that the defendant had neglected and refused to arbitrate was sufficient to entitle the plaintiff to prove waiver of arbitration, and that the provision of the policy respecting the bringing of the action within six months was not a condition precedent, but was in the nature of a forfeiture or limitation which it was not necessary for the plaintiff to plead, and which he had a right to rebut in contradiction of the defendant's plea and proof; and that, if the plaintiff established waiver of the arbitration or refusal to arbitrate, the six-months clause became operative only on such refusal because the plaintiff had six months after such waiver or refusal within which to bring his action. I think the ruling was right, and that the judgment should be affirmed.

The seventh condition of the policy, to the effect that the right of recovery should be forfeited and extinguished on the expiration of six months from the date of the accident unless a settlement with the insured should have been agreed upon or the matter referred to arbitration within that period, is clearly to my mind a clause of limitation, and not a condition precedent. It is a short statute of limitations which the parties themselves have agreed upon. The defendant had the right immediately upon receiving notice of the accident to the plaintiff to say that it would neither pay plaintiff his claim nor arbitrate it, and thereby set running this six-months statute of limitations. Had the defendant done that, the plaintiff would have been compelled to bring his action within the six months or lose his right. The provision as to six months, unless so interpreted, can have no meaning at all. The English arbitration act provides that the award of an arbitrator shall be final unless set aside by the court, which may be done for certain reasons, and may be enforced by leave of the court or judge in the same manner as a judgment. The provision of the policy cannot mean that the assured shall have six months after an award shall be made to bring an action thereon because no action is necessary upon an award or contemplated by the arbitration act. Nor can it mean that, if any action is ever brought under any circumstances, it must have been brought within six months after the happening of the accident.

The contract was made in England, and concededly is to be governed by the English law, and testimony of English lawyers was introduced

on the trial to show what that law was, and it would seem that their views are that the six-months provision applied only in case of refusal to arbitrate and began to run only after such refusal. Their attention was particularly drawn to condition No. 8, and their opinions with respect to the six-months clause are not entirely clear. They testified that plaintiff would be barred from recovering by the stipulation contained in condition 8, respecting arbitration, and that he must submit to arbitration or procure the appointment of an arbitrator "unless the insurance company (defendant) by some overt act had expressly notified W. (plaintiff) that they would not proceed to arbitration at all and excused W. (plaintiff) from making an application to any court or judge to appoint an arbitrator, and that the plaintiff would be precluded from recovering under condition No. 7 "unless he was as aforesaid excused by the act of the insurance company (defendant) from taking the proper steps to have the dispute referred to arbitration." If the six-months clause be treated as a limitation applying only upon refusal to arbitrate or waiver of arbitration, it was not necessary for the plaintiff to anticipate that the defendant would plead such limitation, and set forth in his complaint matters showing avoidance. It was incumbent upon the defendant to plead limitation, and by way of rebuttal plaintiff could show such facts without plea as proved that the limitation was not applicable to him, or that it had been waived. Of course, the pleadings in the action are to be governed by our rules of procedure, and, there being no proof on the subject, it must be assumed that the English law with respect to contract limitation and waiver is the same as our own. It is lawful for parties to agree upon a reasonable limitation for the bringing of an action, and the agreement of limitation in a policy of insurance has the same effect as a statute on the subject. Hamilton v. Royal Ins. Co., 156 N. Y. 327, 50 N. E. 863, 42 L. R. A. 485. In the above case, an agreement for a short limitation was held to have all the effect of a statutory provision, and to have, also, all the benefits of the statute of limitations respecting attempt to bring an action. Under our law also the condition contained in a policy of insurance that no action shall be brought unless commenced within a specified time may be waived by the act of the parties either through agreement founded on a consideration or through estoppel. Ripley v. Ætna Ins. Co., 30 N. Y. 136, 86 Am. Dec. 362; Trippe v. P. F. Society, 140 N. Y. 23, 35 N. E. 316, 22 L. R. A. 432, 37 Am. St. Rep. 529; Bowen v. Preferred Accident Ins. Co., 82 App. Div. 458, 81 N. Y. Supp. 840; Robinson v. Metropolitan Life Ins. Co., 1 App. Div. 269, 37 N. Y. Supp. 146.

According to the testimony of both plaintiff and defendant, negotiations respecting plaintiff's claim and his policy were continued long after the expiration of six months from the happening of the accident; the defendant making no claim that it was relieved from liability under the provisions of the six-months clause. By numerous letters the defendant recognized the plaintiff's claim as subsisting, except for the fact that total blindness did not occur within one calendar month, and that plaintiff had become a resident of Pittsburgh, instead

of proceeding on his journey as was stipulated. Manifestly Denneen and the general manager of the defendant had authority to act in behalf of defendant, and it is not claimed they did not, and, from the correspondence and the personal interviews had with them, it is apparent that the defendant was insisting upon an arbitration in England at a period more than a year after the accident. Because of this insistance, after the plaintiff had offered to arbitrate before certain American citizens or any person whom the defendant might select in the United States, he placed his papers and claim in the hands of a London barrister, who opened negotiations with the defendant, and was referred to their attorneys on the question of the claim and the appointment of arbitrators. The plaintiff in retaining an attorney and in doing this act, which manifestly the defendant insisted upon after the six months had expired, was put to some trouble and expense. The attitude of the defendant and the putting of plaintiff to such trouble and expense operated as a waiver on the part of the defendant of the six-months limitation.

In Trippe v. P. F. Society, supra, the court says:

"It is well settled that such defenses [limitation] are waived when the company with knowledge of all the facts requires the assured by virtue of the contract to do some act or incur some expense or trouble inconsistent with the claim that the contract had become inoperative in consequence of the breach of some of the conditions."

In Barnum v. Merchants' Fire Ins. Co., 97 N. Y. 188, the court says:

"The defendant may by objecting to the proofs of loss impose upon the assured the duty of making them complete and removing, if possible, the dissatisfaction of the insurer, and, if he chooses to do so, the delay is mutual, and the time of limitation necessarily extended."

Negotiations were continued and hope held out to the plaintiff that the defendant would arbitrate to within a few weeks of the bringing of the action. In my opinion the six-months clause was one of limitation, and the defendant by its acts was estopped from pleading it as a defense to the plaintiff's action.

I fully appreciate the holdings of the learned courts in Allen v. Dutchess County Mutual Ins. Co., 95 App. Div. 86, 88 N. Y. Supp. 530, and in Williams v. Fire Association of Philadelphia, 119 App. Div. 573, 104 N. Y. Supp. 100, to the effect that the provision in a policy of insurance that actions shall be brought thereon within 12 months after the occurrence of the loss is a condition precedent, and that, if the insured relies upon a waiver of the limitation, he must plead it as a waiver in his complaint. The fundamental error in these decisions lies in confusing the limitation clause of the policy with the various conditions precedent contained therein, like furnishing proofs of loss for example. A condition precedent is something that a party must do before he begins his action. An agreement that an action shall be brought within a certain time relates to the bringing of the action, and not to the doing of something before it is brought.

An objection that the action was not commenced within the time limited can only be taken by answer (Code Civ. Proc. § 413), and,

even though it appear by the complaint that the action was not commenced within the time limited, advantage cannot be taken by demurrer. Sands v. St. John, 36 Barb. 628. It is improper for a complaint to allege matters in avoidance of an anticipated defense of the statute of limitations (Butler v. Mason, 5 Abb. Prac. 40); and, when the answer sets up the statute as a bar, without reply directed by the court, the plaintiff may prove matter in avoidance (Esselstyn v. Weeks, 12 N. Y. 635; Arthur v. Homestead Fire Ins. Co., 78 N. Y. 462, 467, 34 Am. Rep. 550). If, therefore, the six-months clause was an agreement limiting the time in which to commence the action, plaintiff without plea could prove matter in avoidance.

The plaintiff's complaint was sufficient to permit him to show that the defendant had waived arbitration through refusal to arbitrate. In Glazer v. Home Ins. Co., 113 App. Div. 235, 98 N. Y. Supp. 979, the plaintiff pleaded performance, and that he had served proofs of loss upon the defendant which they had retained without objection, and without requiring any further proof on the subject. The Appellate Division held such plea insufficient to show waiver, and because the proofs were not such as were required under the conditions of the policy reversed the judgment. On appeal the Court of Appeals (190 N. Y. 6, 82 N. E. 727), held such erroneous, and that, while the word "waiver" was not used in the complaint, the facts were sufficiently stated to make a good pleading. In Young v. Phœnix Ins. Co., 61 N. Y. 650, the complaint alleged that proofs of loss were not given within the specified time and set forth certain facts which tended to show a waiver without however stating their effect, and the complaint was held good. By the plaintiff's complaint the defendant was apprised that the plaintiff claimed that he had offered to arbitrate, and that the defendant had refused so to do, and thus no legal effect constituted a waiver of arbitration on defendant's part.

In my opinion condition No. 8 did not require the plaintiff to obtain the award of an arbitrator at all hazards, whether the defendant wanted an arbitration or not. Even if the defendant had an absolute right to arbitration, it could waive that right. When the plaintiff accepted the defendant's policy containing the arbitration clause, he may be assumed to have agreed irrevocably on his part that he would arbitrate, and that arbitration should be a condition precedent to recovery; yet the defendant could relieve him from that condition and could waive its right to an arbitration. The absolute refusal to have anything to do with an arbitration either in England or in the United States was a waiver by the defendant of the arbitration agreement, and the defendant cannot now be heard to say that arbitration should have been had.

If the pleading was sufficient to admit to proof, as I think it was, the plaintiff stands uncontradicted in stating that the defendant's manager told him that, if plaintiff would write him a letter after his return to England, he would submit the matter finally to the defendant's directors, and that, if he did not hear from him by a certain time, he might consider that the defendant refused both to pay and to arbitrate, and that he should go ahead and sue. Plaintiff's story in this

respect was for the jury to believe or disbelieve, and they chose to believe him. Besides, the circumstances corroborate the plaintiff. Denneen himself testifies that there was talk of arbitration, but denies that he ever refused to arbitrate in England. It would seem that the defendant in the beginning of the negotiations was insisting upon that being done, and even as late as the spring of 1906 the defendant's solicitors were corresponding with the plaintiff's attorney on that subject.

The other questions involved were properly disposed of by the court and jury, and I think the judgment should be affirmed, with costs.

CLARKE, J., concurs.